## Bonnell *v.* Covington *et al.*

Where a note was made payable in current bank notes, a plea of tender of bank notes
must aver that they are current, or it will be bad on demurrer.

Where a note is payable in current bank notes of particular banks, and any of the bills
of such banks are current when the note falls due, it seems the maker will be entitled
to the benefit of the difference between them and specie.

IN ERROR from the circuit court of the county of Adams.

This was an action of assumpsit, a memorandum or note for
five hundred and seventy-three dollars, payable in the current notes
of either of the banks of Natchez, or of the Union Bank, dated
October 2, 1839, due 1st January, 1841.

Declaration in common form. Plea of tender, "that defendant
tendered and offered to pay to the plaintiff the said sum of five
hundred and seventy-three dollars in the notes of the Mississippi
Union Bank, according to the tenor and effect of said promissory
note." To this plea there was a demurrer; also a second plea to
the same effect in different form, to which there was a demurrer.

Causes of demurrer to first plea: 1. No averment that the Mis-
sissippi Union Bank is the bank called "Union Bank" in the note.
2. The notes specified were not a legal tender, nor averred to be
current. 3. The second plea does not aver a legal tender.

Demurrer overruled, judgment for plaintiff, and writ of error to
this court.

MONTGOMERY, for plaintiff in error.

Bank bills are governed by the same rules which are applicable
to negotiable notes; and when in the ordinary course of business
the defendant passed to the plaintiff a bill on a bank which had
stopped payment before that time, although it was not known to
either party; held that the defendant was liable for the amount of
the bill. Harley *v.* Thornton, 2 Hill's Rep. 509.

Bonnell *v.* Covington *et al.*

If the seller of goods agree to take notes or bills for them, without agreeing to run the risk of the notes being paid, and the notes turn out to be worthless, this will not be considered a payment. 6 Mass. Rep. 182; 3 Camp. 352, 411; 1 Bay. Rep. 176; 7 D. & E. 64. A tender of such notes is of no avail, unless the seller agreed to take the risk.    2 John. Rep. 460; 2 Caine's Rep. 116; 9 Johns. Rep. 310; 5 Johns. Rep. 68; 11 Wend. Rep. 9.

The bills of specie paying banks are regarded as cash.   9 Johns. Rep. 120; 10 Wheat. 333.

These quotations and authorities abundantly show that where a contracting party agrees to receive the notes of a third person as payment, and before the note is delivered it becomes worthless by the failure of the maker, he is not bound to receive it; and even further, that if the notes are actually received under ignorance of the failure or worthlessness of the maker, it does not amount to payment; and the party receiving may resort to his original demand.   And there is no distinction between the notes of a bank and those of an individual.

In the case under consideration, the contract was made at a time that the notes of the banks mentioned circulated as money, and were properly denominated "currency;" hence the use of the term "current," in the note sued on, which cannot be construed to mean any thing else than the notes of those banks which were current as money.   The word *current*, when applied to money or bank notes, signifies, established by common estimation, generally received.   The meaning of the contract sued must therefore be, that the payer agreed to receive the notes of the banks mentioned at the maturity of the notes, if they were current as money.   If, however, the banks had failed and their notes had ceased to be current before the day of payment, they could not come within the terms of the agreement and constituted no payment, and were not a legal tender.

The only objection to the plea of tender is, that the notes of the Union Bank which were tendered are not even described as current bank notes of that bank.   And we contend that it was necessary to aver that the notes tendered were *current*, to bring them within the meaning of the contract, and constitute a legal offer of

performance.    Replication, that the notes were not current, would have been a departure in pleading, and hence the necessity of a demurrer.

· BOYD, on the same side.

McDANNOLD and MATTHEWSON, for defendants.

The court in overruling the demurrer to our plea of tender, is sustained both by common sense. and the plainest principles of law.    It is evident from the face of the note what was the contract made and understood by the parties to it, and it seems equally plain that in the sentence, "in the current notes of either of the banks of Natchez, or of the Union Bank," the word *current* applies only to the first part of the sentence; for it could not be imagined by persons drawing a note of this kind, that the notes of any one bank would at the same time be both current and uncurrent, and was reasonable only to suppose that at the time the note fell due the circulation of some of the banks of Natchez might be greatly depreciated in value, while the issue of others might be used as a circulating medium.    The word *current*, then, (if any importance can possibly be attached to it,) can only in common sense apply to the first part of the sentence, to the notes of the banks of Natchez, and offering at the time this note became due and payable, to pay the holder of it the amount called for, in the notes of the Union Bank, the defendants fulfilled their part of the contract, and their plea of tender stating those facts was perfectly in accordance with the strict principles of law, and the court below could not do otherwise than overrule the demurrer and sustain the pleas.

Let us for a moment examine the importance which can be attached to the word *current*.    The object of the plaintiff undoubtedly is, to recover the amount in gold and silver, and of course he contends that the words *current notes* means bank notes equivalent in value to specie.    It has been repeatedly decided that courts can judicially know what is the circulating medium of the state in which they have jurisdiction; that that circulating medium generally given and received as money is equivalent to specie, or of a character which places it in real value below a specie standard.    4 Mass. Rep. 252; 3 Monroe's Rep. 149.

Bonnell *v.* Covington *et al.*

In the case of Jones *v.* Falls, Mass. Rep. cited above, Chief Justice Parsons, in giving the opinion of the court, observed that the common sense of the people must be the understanding of the judges; that the judges could take notice in common with the people that bank notes derive their value not only from the certainty but the facility of payment.  The words "foreign bills," in this case, was included in brackets at the bottom of the note, and after considering the propriety of taking those words as a part of the promiser's contract, the learnèd chief justice observes, "the words (foreign bills) may secure a benefit to the promiser, and I consider him as stipulating that the money might be paid in foreign bills, and I consider that the promisee, by taking the note thus written, as agreeing to the stipulation, and I can have no doubt if on the day of payment the promiser had tendered to the promisee foreign bills in payment and they had been refused that this tender and refusal might have been well pleaded to a subsequent action upon the notes."

In the case of Chambers *v.* George, 5 Littell's Rep. 335, the court held the opinion that words or expressions in agreements between individuals are always to be understood in their popular sense, and that a note made payable "in the money of this state," must be understood to mean, payable in bank notes which had taken the place of gold and silver, and was the only medium of universal circulation in the state of Kentucky.  According to these decisions, the court is bound judicially to know whether or not, at the time the note sued on in this case was drawn, gold and silver had ceased to be the circulating medium in this state, and depreciated paper money was given and received in the ordinary transactions of business in the stead of a specie currency.  And of this fact there can be no doubt.  At the time when the note was given to and accepted by the promisee, the only circulating medium was bank paper, varying at different times and according to different circumstances in value, and received and given by every one in payment of debts.  And the only importance which can possibly be attached to the word current, in the note sued on in this case, is, that it meant nothing more than bank paper, be its value either equal to or less than specie, and such bank paper as was mentioned and specified in the note.  It is certainly clear

28*

from the intention of the parties in so wording the note, and from the fact that, at the time the note was given, paper money had entirely taken the place of specie, which had ceased from its scarcity to be generally circulated, that the plaintiffs cannot recover gold or silver for the amount of the note. It was not the contract of the parties as made and understood by them. It would be indeed a case of extreme hardship upon the debtor, who bought property at a price inflated far above its real value, on account of the superabundance and the uncertain value of paper currency, that he should be compelled to pay that price contrary to his stipulations and the agreement understood by all the parties, in gold and silver. The court, we have no doubt, will construe the contract as it was understood by the parties who made it, and give that judgment upon it which the justice of the case demands.

Mr. Justice CLAYTON delivered the opinion of the court.

This was an action of assumpsit brought by the plaintiff in error against the defendants upon a promissory note for five hundred and seventy-three dollars, "in the current notes of either of the banks of Natchez or of the Union Bank, for value received." The defendants pleaded, that upon the day the note fell due they tendered its amount in the notes of the Mississippi Union Bank. To this plea there was a demurrer, which was overruled by the court below and final judgment given against the plaintiff. The note was dated 2d October, 1839, and was payable 1st January, 1841.

The principal objection to the plea is, that it does not aver that the notes which were tendered were current. It is a general rule that a plea should traverse all the material allegations of the declaration. The declaration in this case alleges a contract to pay in the current notes of certain banks; the plea in defence sets up an offer to pay in notes not asserted to be current. By the terms of the contract it is believed that the words current notes are applicable to the Union Bank as well as to the banks of Natchez; and that the plaintiff could not be compelled to receive the uncurrent issue of either. The plea is defective in omitting the allegation that the notes tendered were current.

There are other points made in the cause which it is not neces-

Bonnell *v.* Covington *et al.*

sary to decide.   A single remark will be made upon one position, to prevent misapprehension.   In determining that the plaintiff is entitled to the notes of the banks mentioned that were current on the day the note sued on became due, we do not decide that he was entitled to claim the amount in specie.   If there was any difference between the current notes of those banks, if there were any such, and specie, it may be estimated by the jury, and the defendants allowed the benefit of such difference.   Their verdict must be for the value of the current notes in specie at the time payment should have been made.   2 Yerger, 448; 1 Litt. 30; 3 Mon. 8; Hardin, 509.

Judgment reversed and cause remanded.